IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Donna M. Lee, | ) | C/A No. 1:10-2837-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

    A.    Procedural History

Plaintiff applied for DIB on March 25, 2004,[1] claiming disability since April 1,

_____

[1]The ALJ indicates Plaintiff filed her application on March 25, 2004, which is the date on the administrative record's table of contents. Tr. at 4,  467. Each page of the application is dated March 18, 2004, the first page is stamped March 25, 2004, and Plaintiff signed the application on March 20, 2004. Tr. at 158–61. These minor date

1999,[2] because of chronic back pain.[3] Tr. at 158–61, 191. Her applications were denied initially and on reconsideration. Tr. at 20–21. At Plaintiff's request, Administrative Law Judge Francis F. Talbot ("ALJ") conducted a hearing on August 25, 2005, and issued an unfavorable decision on January 6, 2006, finding Plaintiff was not disabled prior to June 30, 2000, the date her insured status expired. Tr. at 25–35 (ALJ decision); 404–32 (hr'g tr.).

In a May 17, 2006 Order, the Appeals Council granted Plaintiff's request to review the ALJ's January 6, 2006 unfavorable decision, vacated that decision, and remanded the case to the ALJ with instructions that he include the February 7, 2005 report of Plaintiff's treating physician, David W. Moon, M.D., in the record; evaluate that report in giving further consideration to Plaintiff's residual functional capacity ("RFC"); further evaluate Plaintiff's subjective complaints; and obtain supplemental evidence from a vocational expert ("VE"). Tr. at 40–41.

_____

discrepancies are not material to the issues Plaintiff raises.

[2]In her application, Plaintiff claimed her disability began on April 1, 1999, which is the alleged onset date used by the ALJ in his decision and by the Commissioner in his brief. Tr. at 158, 467, 476, Def.'s Br. at 1. In her brief, as well as in her letter seeking Appeals Council review, Plaintiff indicates that her alleged onset date is June 1, 2000. Pl.'s Br. at 1, 10, 28, 37, Tr. at 392–93. Although the Appeals Council notes additional evidence concerns Plaintiff's purported condition since June 1, 2000, it does not address the discrepancy in onset dates in its Order. *See* Tr. at 9–13. This discrepancy does not impact the undersigned's ruling on issues Plaintiff raises on appeal.

[3]In a January 11, 2005 Disability Report–Appeal, Plaintiff also reported impairments of depression and osteoarthritis. Tr. at 183.

2

After a November 15, 2006 hearing, the ALJ issued an unfavorable decision on January 26, 2007. Tr. at 433–63 (hr'g tr.), 464–76 (ALJ notice and decision). Plaintiff again appealed to the Appeals Council and submitted a July 19, 2009 report from Dr. Moon. *See* Tr. at 13. On October 24, 2008, the Appeals Council remanded the case to the ALJ for further proceedings because the record was incomplete due to the inability of the Social Security Administration ("SSA") to locate the November 15, 2006 hearing transcript. Tr. at 88–91. However, in a June 22, 2009 Order, the SSA informed Plaintiff that it had located the November 15, 2006 hearing transcript, that no additional hearing was required, and the matter was remanded to the Appeals Council for review of Plaintiff's challenge to the January 26, 2007 unfavorable decision. Tr. at 19.

In a September 16, 2010 Order and Notice, the Appeals Council denied Plaintiff's request for review after considering the reasons she disagreed with the ALJ's decision and the additional evidence she submitted. Tr. at 9–13. The Appeals Council made the additional evidence—Dr. Moon's July 19, 2009 report and her counsel's brief—part of the administrative record, but found that the additional evidence, considered in light of other record evidence as a whole, did not provide a reason to change the ALJ's decision. Tr. at 10, 13 (Appeals Council's Order), 389–90 (Dr. Moon's July 14, 2009 opinion), 391–403 (June 10, 2010 brief of Pl.'s counsel to Appeals Council, including Dr. Moon's Feb. 6, 2009 note that Plaintiff's condition had not changed since his February 5, 2005 opinion). The Appeals Council's order explained why Dr. Moon's opinion did not

3

provide reasons for changing the ALJ's decision, citing to records from 2000 and later that were inconsistent with the new opinion. Tr. at 10.[4]

Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 3, 2010. [Entry #1].

B.    Plaintiff's Background and Medical History

Plaintiff was born in 1973 and was 26 years old as of her date last insured. Tr. at 158, 474. She has a GED, and her past relevant work ("PRW") was as a cashier, which was semi-skilled and at the light exertional level. Tr. at 207, 457, 474–75.

The ALJ's decision and Plaintiff's brief include a detailed summary of Plaintiff's medical history, which the court does not repeat here. *See* Tr. at 469–71, Pl.'s Br. at 2–27. Plaintiff's medical history is detailed within as relevant.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Testimony of Plaintiff

At the November 15, 2006 hearing, Plaintiff testified that she lived with her husband and children. Tr. at 436–37. She said she had a GED and took a few courses at a technical college. Tr. at 439–40. She said she began seeing Dr. Moon before she had back problems. Tr. at 437. When she began having back problems, she saw Dr. Moon, who examined her, performed tests, prescribed medications, and referred her to pain

---

[4]The undersigned discusses more fully the Appeals Council's reasoning that the new evidence did not provide grounds for changing the ALJ's decision.

management specialists and orthopedists. Tr. at 437–38. Plaintiff said that in June 2000 she had pain in her left rib cage, and an MRI indicated the pain was coming from her back. Tr. at 439. She described it as a burning pain that was worse on her the left side. Tr. at 440. She said it never went away completely and that she did physical therapy and took numerous medications, including Percocet, Ultram, and Neurontin. *Id.* Plaintiff said she had epidural shots in January and February 2000, that the shots helped her pain some, but that the pain would return. Tr. at 441. She said the pain impacted her ability to stand, sit, or lie down, and she estimated she could not sit more than 20 to 30 minutes in a recliner before changing positions and walking around. Tr. at 441–42. She estimated she could sit up straight in a chair for no more than ten or 20 minutes before needing to move. Tr. at 442. Plaintiff said that in 2000, her pain was around the center of her body, but that it later began hurting in other areas, as well. *Id.* She said that in June 2000, she could not lift anything that required her to bend or stoop, and that she could not twist her body. Tr. at 442–43. Plaintiff said the medications she took in June 2000 affected her ability to concentrate and made her dizzy and drowsy. Tr. at 443. She also said she had problems sleeping in 2000. Tr. at 449.

Plaintiff testified that in January 2000, when she was having epidural shots for pain, she had not had five good days in a row. Tr. at 445. She also said she had never had a pain-free day. *Id.* She said that in June 2000, she had days when her pain was so bad that she did not get dressed for the day, although she said she was capable of dressing

5

herself. Tr. at 445–46. Plaintiff testified that she had problems with anxiety and depression in June 2000 and that Dr. Moon gave her medications for those conditions, including Paxil and Xanax. Tr. at 446–47. Plaintiff said that, since 2000, her mother and husband helped with raising their children and that her mother, husband, and sister-in-law cleaned the house in 2000. Tr. at 447–48. Plaintiff said she had no social life in 2000 or in the present and that she only left the house to attend doctors' appointments. Tr. at 448.

Plaintiff said she was not working when her back problems began because she had quit working when she had children. *Id.* She indicated she had planned to return to work and to become a nurse, but that she was not able to do so when she developed back problems. Tr. at 448–49.

b.    Testimony of Plaintiff's Husband

Plaintiff's husband, Thomas Lee, also testified at the November 15, 2006 hearing. Tr. at 452–56. He said that he and Plaintiff had been married for 15 years, and that he worked a swing-shift job in 2000 and at the time of the hearing. Tr. at 453. Mr. Lee testified that he worked varying shifts so he could be at home with his family at different times and that he recalled a good bit of Plaintiff's medical condition in 2000. *Id.* He said Plaintiff was in a lot of pain, did not have much of a life, and took a lot of pain medication that made her sleepy. Tr. at 453–54. Mr. Lee said he took his wife to doctors' appointments in 2000, and he observed her having difficulties standing and walking. Tr. at 454. He said she looked like walking and standing were painful, and that she had to sit

6

in a reclined position, but not for very long. *Id.* He said she could not go to movies or places that required sitting for hours at a time. *Id.* Mr. Lee testified that before Plaintiff began having back pain, they had enjoyed an outgoing life. Tr. at 455. He testified that he helped a lot with household chores and with the children when he was home, and that his mother-in-law helped a lot with those things in 2000. *Id.* He said that either he or his mother-in-law tried to be at home with Plaintiff in 2000 when possible, because her medications would make her drowsy, and it was difficult to trust her with the children. Tr. at 455–56. Mr. Lee testified that Plaintiff had difficulty focusing on household tasks in June 2000, and that he and his mother-in-law did most of the grocery shopping then. Tr. at 456.

c.    Testimony of VE

VE Robert Brabham also testified at the November 15, 2006 hearing. Tr. at 457–62. He described Plaintiff's PRW as a cashier as semi-skilled and at the light exertional level. Tr. at 457. The ALJ asked him to consider a hypothetical person of Plaintiff's age, education, and work experience who could perform unskilled work at the sedentary exertional level, with the option to sit or stand at will; who would not be required to use ladders, scaffolds, or ropes; and would not be exposed to hazardous environments such as unprotected heights. *Id.* The VE opined that jobs existed that such an individual could perform, including the sedentary, unskilled job of a machine tender, with approximately 7,000 positions available state wide and over 275,000 nationally. Tr.

7

at 457–58. The VE noted, however, that the restriction of permitting a sit/stand option could reduce those numbers, possibly by 50%. Tr. at 458. VE Brabham testified that the hypothetical individual described could perform sedentary, unskilled work as a surveillance monitor, and that approximately 1,000 such positions existed locally and over 40,000 positions existed nationally. *Id.* He did not believe the sit/stand option would significantly impact those numbers. *Id.* The VE also testified that the sedentary, unskilled job of a production associate in a manufacturing setting would be available to the hypothetical individual identified, and that there were approximately 1,000 such jobs locally and over 38,000 nationally. *Id.* He did not believe the sit/stand option would significantly impact those numbers. *Id.* VE Brabham testified that his testimony was based on the *Dictionary of Occupational Titles* ("DOT") and/or his experience as a VE. *Id.* He further testified that, if all testimony from Plaintiff and her husband at the hearing were fully credible, there would be no work the individual could perform. *Id.* The VE also testified that the numbers of available jobs were based on the then-current (November 2006) conditions, but that there would possibly have been fewer such jobs available in 2000, but that the difference would not have been substantial. Tr. at 458–59.

        2.     The ALJ's Findings

In his January 26, 2007 decision, the ALJ made the following findings of fact and conclusions of law:

    1.     The claimant last met the insured status requirements of the Social Security Act on June 30, 2000.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 1999 through her date last insured of June 30, 2000 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured (June 30, 2000), the claimant had the following severe impairment: degenerative disc disease of the thoracic spine (20 CFR 404.1520(c) *et seq.*).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity for sedentary work. Specifically, the claimant could lift and carry no more than 10 pounds at a time, sit for six hours in an eight-hour workday, and stand and walk for two hours in an eight-hour workday. The claimant had the following restrictions: unskilled work with a sit/stand option at will, no climbing of ladders, scaffolds, or ropes, and no hazards.

6.    Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7.    The claimant was born on September 23, 1973 and was 25 years old on her alleged onset date and 26 years old on the date last insured, which is defined as a younger individual age 18–44, (20 CFR 404.1563).

8.    The claimant has obtained a general education diploma (GED) and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11.    The claimant was not under a "disability," as defined in the Social Security Act, at any time from April 1, 1999, the alleged onset date, through June 30, 2000, the date of this decision (20 CFR 404.1520(g)).

Tr. at 469–76.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons: 1) by failing to give her treating physician's opinion controlling weight; 2) by finding Plaintiff's subjective testimony less than fully credible; and 3) by failing to perform a credibility analysis regarding the testimony of Plaintiff's husband. The Commissioner counters that substantial evidence supports the ALJ's findings and that neither the ALJ nor the Appeals Council committed legal error in finding Plaintiff was not disabled during the period at issue.

A.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability

10

claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant

11

can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3) (applying § 405(g) judicial review provisions to SSI matters). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973).

B.    Analysis

1.    The Commissioner's Consideration of the Opinions of Plaintiff's Treating Physician

Plaintiff's first allegation of error is that the Commissioner erred by discounting the opinions of her treating physician, Dr. Moon. A summary of Dr. Moon's opinions and the ALJ's and Appeals Council's treatment of those opinions sets the stage for Plaintiff's argument.

a.    Dr. Moon's Opinions Considered by the ALJ

Dr. Moon's February 15, 2005 opinion stated that he had been Plaintiff's treating general physician since October 5, 1998. Tr. at 115–17.[5] Dr. Moon stated that his opinion related back to June 1, 2000, as follows: "Although [Plaintiff's] symptoms have increased in severity, to a reasonable degree of medical certainty, her condition is in the same state

---

[5]Dr. Moon's opinion is provided in letter form. Tr. at 115–17. The first page of the letter is dated February 7, 2005, but he signed it on February 15, 2005. Compare Tr. at 115 with 117.

it was in as of June 1, 2000." Tr. at 115. He opined that Plaintiff met or medically equaled

Listed Impairment 1.04[6] as of June 1, 2000, setting out the Listing's requirements and

reviewing Plaintiff's medical history to demonstrate why she satisfied that Listing. Tr. at

115–16. Dr. Moon indicated Plaintiff suffered from vertebrogenic disorders that included

severe disseminated osteoarthritis with highly abnormal bone scan for her age. Tr. at 116.

He stated she had undergone treatment at a pain management facility, which included

therapy exercises, steroid injections, TENS Unit, and medication, but that she had

experienced very little abatement in her chronic severe pain. *Id.* His opinion also outlined

Plaintiff's diagnoses and treatments by other medical professionals, including Dr. L.R.

Perry's January 2000 diagnosis of thoracic disc disease with thoracic radiculitis, Dr. W.S.

Edwards's surgery of decompressive laminetomy T-12 with excision HNP in April 2001,

and Dr. Stuart C. King's August 2001 diagnosis of post laminectomy syndrome with

possible neuro windup. *Id.* Dr. Moon also indicated that Plaintiff suffered from facet joint

disease and depression. *Id.* Dr. Moon stated that, as of February 2005, Plaintiff continued

to have "chronic cervical, thoracic and lumbar pain, muscle spasms, significant limitation

of motion, appropriate radicular distribution of significant motor loss, weakness, sensory

loss, and reflex loss in her spine and lower extremities since June 1, 2000." *Id.*

    Dr. Moon opined that Plaintiff's condition limited her to no more than two hours

---

    [6]Dr. Moon's February 15, 2005 opinion mistakenly refers to the Listed impairment
he considered as Listing 1.02. Tr. at 115. However, he included the text of Listing 1.04,
Disorders of the Spine, which is the same Listed impairment the ALJ considered in
evaluating Plaintiff. *Id.*, Tr. at 472.

per day of sitting or standing/walking, and lifting less than ten pounds, that her chronic use of narcotic medications have caused her frequent episodes of failure to concentrate and be attentive to simple tasks, and that her chronic pain frequently would require her to rest in a reclined position for more than one hour in the morning and one hour in the afternoon. Tr. at 116–17. Dr. Moon further noted that Plaintiff's pain frequently caused her to have crying spells and difficulty interacting with the general public.  He stated her frequent physician visits would likely make her significantly late to or absent from work at least one day per week. Tr. at 117. Dr. Moon based his opinion on his physical examination of Plaintiff and on her subjective complaints, which he indicated he found credible based on his physical findings. *Id.*

Dr. Moon updated his February 15, 2005 letter opinion by re-signing the opinion on October 31, 2005, with the comment that Plaintiff "had no improvement from last notation." Tr. at 382.

In his January 26, 2007 decision, the ALJ outlined Dr. Moon's February 2005 opinion and noted that, on October 31, 2005, Dr. Moon reported Plaintiff's condition had not improved. Tr. at 472. The ALJ discussed portions of Plaintiff's testimony regarding her claimed restrictions as of June 2000 and referenced the hearing testimony of Plaintiff's husband regarding her condition in 2000. Tr. at 472–73. He noted that none of her treating physicians had placed any functional limitations on her during the period of April 1, 1999 (her original alleged onset-of-disability date) through June 30, 2000 (the

date she was last insured for purposes of DIB). Tr. at 473. The ALJ further noted that the record contained no medical opinions from treating or examining physicians from the period at issue. *Id.* He then found that Plaintiff's medical records from before her last insured date of June 30, 2000 did not support Dr. Moon's February 15, 2005 opinion. *Id.* The ALJ also referenced several medical records that post-dated June 30, 2000, noting Plaintiff continued treatment for her back condition. Tr. at 474. He found that these records did not substantiate the severity of Plaintiff's back condition for the period at issue, pre-June 30, 2000. *Id.*

> b.    Dr. Moon's Opinions Considered By the Appeals Council

On June 10, 2010, Plaintiff's counsel sought review by the Appeals Council and included additional opinions of Dr. Moon. *See* Tr. at 391–403.

On February 6, 2009, Dr. Moon again renewed his February 15, 2005 opinion by re-signing that opinion and indicating "[t]here has been no changes or improvement of condition since last exam." Tr. at 403.[7]

Dr. Moon wrote another opinion in a letter dated July 14, 2009, which he indicated related to and supplemented his February 15, 2005 opinion, as updated October 31, 2005[8]

---

[7]Plaintiff included the copy of the February 2005 opinion that Dr. Moon again signed in February 2009 as an attachment to her brief before the Appeals Council. Tr. at 401–03, *see* Tr. at 391–403 (entire Plaintiff's brief and attachments considered as Appeals Council ex. 2: AC–2).

[8] Dr. Moon incorrectly cites the updated opinion in his July 14, 2009 letter as October 31, 2006. Cf. Tr. at 389 with 403, 472.

16

and February 6, 2009. Tr. at 389–90. Dr. Moon outlined Plaintiff's back treatment by him and by other physicians from August 1999 through Dr. Edwards' decompressive laminectomy at T12 in April 2001. *Id.* Dr. Moon indicated that Plaintiff's treatments and surgery had not alleviated her pain and that she continued to suffer from "chronic unrelenting pain from severely disseminated arthritis throughout her cervical, thoracic and lumbar spine regions." Tr. at 390. Dr. Moon stated that Plaintiff "continues to have muscle spasms, significant limitation of motion, appropriate radicular distribution of significant motor loss, weakness, sensory loss and reflex loss in her spine and lower extremities since June 1, 2000." *Id.* He then wrote that "I understand that Social Security regulations would require her condition to have been at a certain degree of severity as of the date she was last insured for benefits which was, by information provided to me, would be June 2000. I am certain to a reasonable degree of medical certainty that her condition had reached that level of severity by June of 2000." *Id.*

On September 16, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision, but made part of the administrative record Plaintiff's brief to the Council and Dr. Moon's July 14, 2009 opinion. Tr. at 9–13. In its order, the Appeals Council focused on Dr. Moon's July 2009 opinion and explained why it did not change the ALJ's decision. Tr. at 10. The Appeals Council quoted the portion of Dr. Moon's July 2009 opinion that described Plaintiff as "having chronic, unrelenting pain since June 1, 2000," specifically noting that Dr. Moon opined that since June 1, 2000,

17

Plaintiff had had "muscle spasms, significant limitation of motion, appropriate radicular distribution of significant motor loss, sense loss, and reflex loss" in her spine and lower extremities. *Id.*

The Appeals Council then discussed other record evidence before the ALJ and found that Dr. Moon's new report was inconsistent with record evidence. *Id.* For example, the Appeals Council discussed the March 13, 2000 record of Plaintiff's treating orthopedist, Dr. Edwards, and noted that the record "indicate[d] none of the spasm or neurological and other abnormalities" that Dr. Moon reported Plaintiff had at that time. Tr. at 10 (citing ex. 2F,[9] p. 10, available at Tr. at 249). The Appeals Council noted that Dr. Edwards found on March 13, 2000, that Plaintiff continued to tolerate her activities as a housewife. Tr. at 10 (citing Tr. at 249). The Appeals Council also referred to the March 1, 2001 treatment note of Dr. Edwards, noting it did not indicate the motor, sensory, or reflex loss that Dr. Moon opined Plaintiff had in 2000. Tr. at 10 (citing ex. 2F, p. 8, available at Tr. at 247). The Appeals Council then noted Plaintiff had back surgery in April 2001 when a March 2001 MRI of her thoracic spine indicated a "rather large" herniation at T12/L1. *Id.* The Council contrasted the March 2001 herniation that resulted in surgery with the "relatively small" T12/L1 disc protrusion found in a March 2000 CT myelogram. Tr. at 10 (citing ex. 2F, p.9, available at 248).

The Appeals Council concluded that Dr. Moon's July 2009 opinion regarding

---

[9]A scrivener's error refers to Dr. Edwards' record as exhibit 25. Tr. at 10. Elsewhere, he correctly refers to those records as being available as exhibit 2F.

Plaintiff's June 2000 condition was inconsistent with the record evidence from around

2000. Tr. at 10. Further, the Appeals Council found that record evidence indicated

Plaintiff's condition changed after her last-insured-date of June 30, 2000. *Id.*

Accordingly, the Appeals Council determined that neither Dr. Moon's July 2009 opinion

nor the contentions of Plaintiff's counsel provided reasons to change the ALJ's decision.

*Id.*

> c.    The Commissioner Appropriately Considered and Discounted
>        Dr. Moon's Opinions

Plaintiff argues that the Commissioner erred by failing to give controlling weight

to Dr. Moon's opinion that she met or medically equaled Listing 1.04 and to the limited

RFC that Dr. Moon opined she had as of June 2000. Pl.'s Br. at 28–35. She submits that

the ALJ erred in (a) discounting Dr. Moon's February 2005 opinion and (b) in finding his

July 2009 opinion did not require a change of the ALJ's decision. *Id.* at 34–35. The

Commissioner disagrees, arguing the ALJ properly evaluated the medical source opinions

of record in finding she had the RFC to perform sedentary work through June 30, 2000,

the date she was last insured. Def.'s Br. at 6–12. The Commissioner's brief does not

discuss the details of the Appeals Council's September 16, 2010 order or the Appeals

Council's discussion of Dr. Moon's July 2009 opinion.

If a treating source's medical opinion is "well-supported and not inconsistent with

the other substantial evidence in the case record, it must be given controlling weight[.]"

SSR 96-2p; *see also* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will

be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76

20

F.3d at 589.

When the Appeals Council receives new and material evidence, it is to consider it in deciding whether to grant further review. 20 C.F.R. § 404.970; *see Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (*en banc*). The Fourth Circuit recently held that, although the Appeals Council must consider new and material evidence presented, "the regulatory scheme does not require the Appeals Council to articulate its findings when it considers new evidence and denies review." *Meyer v. Astrue*, No. 10-1581, 2011 WL 6008976, *5 (4th Cir. Dec. 2, 2011). The Fourth Circuit then noted, however, that "'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review.'" *Id.* (*quoting Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006)). In this case, the Appeals Council considered Dr. Moon's July 2009 opinion as new evidence, but denied further review. Tr. at 9–10. Here, the Appeals Council provided a helpful, detailed analysis regarding why Dr. Moon's new opinion did not require a change of the ALJ's decision. Tr. at 10. Accordingly, the undersigned can consider the findings of the ALJ and the Appeals Council in determining whether the decision is supported by substantial evidence and is free from legal error.

In arguing the Commissioner improperly rejected Dr. Moon's opinions, Plaintiff reiterates her history of treatment by Dr. Moon and his involvement referring her to specialists such as Dr. Edwards and other orthopedists, particularly from 1998 through

her last insured date of June 30, 2000. Pl.'s Br. at 29–30. She also cites to her medical records for objective evidence and to her hearing testimony for subjective evidence that she claims supports Dr. Moon's opinions regarding her RFC. *Id.* at 32–34.

In response, the Commissioner argues that Dr. Moon's opinions are inconsistent with record evidence and that the ALJ appropriately explained his reasons for discounting the opinions. Def.'s Br. at 6–12. He submits that what Plaintiff asks the court to do on appeal is to improperly weigh the evidence or substitute its opinion for that of the Commissioner. *Id.* at 9–10.

Having reviewed record evidence, the parties' arguments, the decision of the ALJ and the order of the Appeals Council, the undersigned is of the opinion that Dr. Moon's opinions were properly rejected and that the Commissioner's decision regarding Plaintiff's RFC as of June 2000 is supported by substantial evidence.

In reviewing opinion evidence regarding Plaintiff's RFC,[10] the ALJ noted that no treating or examining physician offered opinions regarding Plaintiff's abilities or placed

---

[10] In addition to opining that Plaintiff's RFC was limited, Dr. Moon opined in February 2005 that Plaintiff met or medically equaled Listing 1.04. *See* Tr. at 115–16. In his decision, the ALJ found that the medical evidence did not disclose compromise of a nerve root or the spinal cord with evidence of significant nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Tr. at 472. Other than arguing that the ALJ and Appeals Council improperly discounted Dr. Moon's opinions, Plaintiff does not provide argument, nor does she cite to specific evidence she claims demonstrates she meets or medically equals Listing 1.04. The undersigned is of the opinion that the ALJ's finding that Plaintiff did not meet or medically equal Listing 1.04 or another listed impairment is supported by substantial evidence.

any limitations on her RFC as of the time her insured status expired on June 30, 2000. Tr.

at 473. He discussed Plaintiff's back complaints and treatments in 1999 and 2000 and

found they did not support Dr. Moon's February 15, 2005 opinion regarding her RFC as

of June 30, 2000. *Id.* For example, he noted that Plaintiff was not in acute distress when

she saw Dr. Moon on March 10, 2000, and that when she saw orthopedist Dr. Edwards on

March 13, 2000, she was in no acute distress and had no difficulty rising from seated to

standing. Tr. at 474. The ALJ also noted that Dr. Edwards' findings of March 13, 2000

indicated Plaintiff had spinal flexibility, had no scoliosis, had no spinal tenderness, had no

paraspinous spasm/trigger points/atrophy, had normal motor functioning of the lower

extremities, had no long track findings, had full range of motion of the hips and knees,

and had no problems with her gait. *Id.* The ALJ further noted that a March 27, 2000 CT

myelogram revealed a small left-sided disc protrusion at T12-L1, for which Plaintiff saw

another orthopedic surgeon who continued her conservative treatment and placed no

limitations on her activities. *Id.,* Tr. at 248 (Mar. 27, 2000 notes of Dr. Edwards regarding

relatively small disc protrusion and referring Plaintiff to Dr. John A. Glaser with the

Medical University of South Carolina ("MUSC")); 239 (Dr. Glaser's Apr. 10, 2000

record finding normal reflexes, no motor, sensory, or reflex deficits, and recommending

nonsurgical treatment).

By reviewing Dr. Moon's opinions regarding Plaintiff's condition and comparing

them to relevant medical records of the time at issue, the ALJ did what he was required to

do. He considered Dr. Moon's opinion and explained how it was inconsistent with medical records of Dr. Moon and of orthopedic specialists. *See Craig*, 76 F.3d at 590, 20 C.F.R. § 404.1527(d)(4). Dr. Moon's 2005 and 2009 opinions regarding Plaintiff's condition in June 2000 are inconsistent with the medical records the ALJ discussed. The record supports the ALJ's handling of Dr. Moon's opinion. *See* Tr. 470–74.

Plaintiff also argues that the Appeals Council erred by finding Dr. Moon's July 2009 report was inconsistent with earlier evidence. Pl.'s Br. at 34. She specifically complains that the Appeals Council erroneously indicated she had back surgery in April 2001 only after returning to orthopedic treatment after a long absence. *Id.* (citing Tr. at 10). Plaintiff submits that the Appeals Council misinterpreted Dr. Edwards' note regarding her "long absence," explaining that her absence was from orthopedic care by him and his colleagues while receiving care in another city, and that she had not left orthopedic care completely. Pl.'s Br. at 34. She submits that her complaints were ongoing and that medical evidence supports her complaints of severe pain and documents her continued treatment. *Id.* at 34–35.

Plaintiff's point that she continued orthopedic care at MUSC in 2000 and 2001, and that her "long absence" was from Dr. Edwards' care in Florence, South Carolina while receiving treatment at MUSC is well-taken. *See* Tr. at 248 (Mar. 27, 2000 notes of Dr. Edwards referring Plaintiff to Dr. Glaser); 239 (record of Plaintiff's Apr. 10, 2000 examination by Dr. Glaser); 247 (Dr. Edwards' Mar. 1, 2001 record of rechecking

24

Plaintiff after "long absence," including note that Plaintiff saw Dr. Glaser on his referral). However, it does not then follow that the Appeals Council's detailed consideration of Dr. Moon's 2009 opinion regarding Plaintiff's condition in 2000 is itself flawed.

The undersigned agrees with the Appeals Council that Dr. Moon's 2009 opinion does not require a change to or reconsideration of the ALJ's decision. As detailed above, the Appeals Council focused on Dr. Moon's July 2009 opinion, which described Plaintiff as having "muscle spasms, significant limitation of motion, appropriate radicular distribution of significant motor loss, sense loss, and reflex loss" in her spine and lower extremities as of June 2000, and compared it to Plaintiff's medical records from March 2000 and other dates closer to June 30, 2000. Tr. at 10 (citing Tr. at 390). The Appeals Council further found that record evidence indicated Plaintiff's condition changed after her last-insured-date of June 30, 2000. Tr. at 10.

The undersigned finds that the ALJ and the Appeals Council appropriately considered and discounted Dr. Moon's opinions regarding Plaintiff's condition as of June 2000. This allegation of error should be dismissed.

2.      The ALJ Appropriately Considered Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by finding her testimony less than fully credible as to her subjective complaints of disabling pain, violating SSR 96-7p. Pl.'s Br. at 35–36. The court disagrees.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the

25

ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. If so, the ALJ is to consider the record as a whole, including both objective and subjective evidence, in assessing Plaintiff's credibility regarding the severity of his subjective complaints, including pain. *See* SSR 96-7p; *see also* 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 591–96. The ALJ need not accept Plaintiff's subjective complaints at face value and may consider her credibility in light of his testimony and the record as a whole. If the ALJ rejects a claimant's testimony about her pain or physical condition, he is to explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence and to permit the claimant and subsequent reviewers to understand the weight and the reasons for the weight the ALJ gave Plaintiff's subjective claims. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)); SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms she alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of her symptoms was "not entirely credible." Tr. at 473.

The court finds that the ALJ adequately considered Plaintiff's subjective

complaints and articulated his reasons for finding her claims about her pain less than fully credible. The ALJ's determination is supported by substantial evidence.

The ALJ noted that none of Plaintiff's treating physicians limited her activities in any way during the period of April 1, 1999 (Plaintiff's original alleged onset date) through her last date insured of June 30, 2000. *Id.* He also noted that Plaintiff's back problems were treated conservatively. *Id.* The ALJ also noted that Plaintiff testified that her mother helped with housework in 2000. *Id.* He noted, though, that she reported to her physician on March 13, 2000, that she was able to tolerate her housewife activities. *Id.* (referring to ex. 2F, available at 249). The ALJ considered Plaintiff's testimony that she had side effects from medication, but he noted that her medical records from the period at issue did not corroborate those allegations. Tr. at 473. The ALJ could reasonably infer that because no medical sources had placed limitations on Plaintiff's RFC, her doctors did not find her subjective complaints to be severe enough to require such limits.

Further, the undersigned notes that Plaintiff begins her argument regarding the ALJ's credibility assessment by reiterating Dr. Moon's subsequent opinion that she was significantly functionally limited as of her alleged onset date. Pl.'s Br. at 36. For the reasons discussed above, the undersigned finds the ALJ and Appeals Council appropriately considered and discounted Dr. Moon's retroactive opinions regarding Plaintiff's June 2000 functional limitations.

The undersigned is of the opinion that the ALJ's determination not to fully accept

Plaintiff's claims of wholly disabling pain is supported by substantial evidence. Therefore, it is recommended that Plaintiff's second allegation of error be dismissed.

     3.      The ALJ Adequately Evaluated the Testimony of Plaintiff's Husband

Plaintiff also argues that the ALJ erred by citing to and discounting some of the testimony of her husband, Thomas Lee, without making findings regarding his credibility. Pl.'s Br. at 36–37. The Commissioner disagrees, arguing that the ALJ properly considered the lay testimony of Mr. Lee and that his credibility determinations are supported by substantial evidence. Def.'s Br. at 12–14.

The undersigned agrees with the Commissioner and finds that the ALJ discharged his duty to address Mr. Lee's testimony. *See* 20 C.F.R. § 414.1529(c); SSR 96-7p. In considering the credibility of Plaintiff's subjective complaints, the ALJ summarized the testimony of Plaintiff and her husband by describing medical and non-medical evidence relating to her subjective testimony, and his determination is supported by substantial evidence. Tr. at 473. He particularly noted that Mr. Lee testified regarding Plaintiff's significant pain in June 2000 and that he or his mother-in-law took care of the children and did grocery shopping. *Id.*

Because the ALJ properly considered Plaintiff's credibility and properly determined she was not fully credible, Plaintiff has not shown harm from the ALJ's failure to make a specific finding regarding the credibility of her husband's lay witness testimony. He was not required to provided detailed discussion of every point. *See*

*Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). The undersigned is of the opinion that the ALJ appropriately considered Mr. Lee's testimony.

Further, the undersigned agrees with the Commissioner that the ALJ's treatment of the subjective evidence, including Mr. Lee's testimony, met the goal of SSA regulations concerning lay witness testimony by discussing the same impairments and symptoms attested to by the lay witness. The essential purpose of requiring ALJ's to address the testimony of each lay witness is to ensure a thorough consideration of the effects of Plaintiff's impairments on her ability to work. Lay witnesses "may provide [statements] about how the symptoms affect your activities of daily living and your ability to work. . . ." 20 C.F.R. § 404.1529(a). Lay testimony may "show the severity of your impairment(s) and how it affects your ability to work. . . ." 20 C.F.R. § 404.1513(d). As discussed above, the undersigned finds that the ALJ discussed the impairments and symptoms attested to by Plaintiff and her husband. Accordingly, any error from not specifically analyzing Mr. Lee's credibility was harmless.

Because the ALJ's credibility determination is supported by substantial evidence, the undersigned recommends deferring to his findings regarding the credibility of Plaintiff's subjective complaints and symptoms as testified to by her and her husband.

The court should not substitute its judgment for that of the ALJ, the finder of fact.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether his decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 21, 2011                              Shiva V. Hodges
Florence, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**