IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

Donna M. Lee,                            )
                                         )  C/A No. 1:10-2837
                    Plaintiff,           )
                                         )
          vs.                            )
                                         )       **OPINION AND ORDER**
Michael J. Astrue, Commissioner of       )
Social Security Administration,          )
                                         )
                    Defendant.           )
_____)

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"),

codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

Commissioner of Social Security ("Commissioner").

I. <u>PROCEDURAL HISTORY</u>

Plaintiff Donna M. Lee alleges that she has been disabled since April 1, 1999, because of

depression and problems with her back from a spinal fusion. Plaintiff last met the insured status

requirements of the Act on June 30, 2000.[1]

Plaintiff filed an application for a period of disability and disability insurance benefits on

March 25, 2004. Her application was denied initially and upon reconsideration. Plaintiff requested

a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on August 25, 2005.

On January 6, 2006, the ALJ issued a decision that Plaintiff was not disabled under sections 216(i)

and 223 of the Act through June 30, 2000, the last date insured. On May 17, 2006, the Appeals

Council granted Plaintiff's request to review the ALJ's decision. The Appeals Council vacated the

_____

[1] To qualify for disability benefits, Plaintiff must prove that she became disabled prior to the
expiration of her insured status. <u>See</u> 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a),
404.131(a)(2005)

decision and remanded the cause to the ALJ to consider a February 7, 2005 report prepared by David W. Moon, M.D., Plaintiff's treating physician; evaluate that report in giving further consideration to Plaintiff's residual function capacity; further evaluate Plaintiff's subjective complaints; and obtain supplemental evidence from a vocational expert.

The ALJ held a hearing on November 15, 2006. The ALJ issued an opinion on January 26, 2007 that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act through June 30, 2000, the date last insured. On October 24, 2008, the Appeals Council remanded the case for further proceedings because the hearing transcript could not be located. On June 22, 2009, the case was dismissed by the ALJ and returned to the Appeals Council because the hearing transcript was located. The Appeals Council thereafter reviewed the administrative record and a new July 2009 report prepared by Dr. Moon. Thereafter, the ALJ's January 26, 2007 decision became the "final decision" of the Commissioner on September 16, 2010, after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for a Report and Recommendation. On December 21, 2011, the Magistrate Judge filed a Report and Recommendation in which she recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on January 9, 2012, to which the Commissioner filed a reply on January 26, 2012.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the

Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the

record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## III. DISCUSSION

### A. Factual Background

Plaintiff was born in 1973. She has a GED and past relevant work as a cashier. Her relevant medical history prior to June 30, 2000 is as follows.

Plaintiff was seen by David W. Moon, M.D. on August 31, 1999 for back pain in the area of the low thoracic upper lumbar area. Straight leg raising was negative. Motor, sensory, and vascular intact. Plaintiff exhibited musculoskeletal back pain. Tr. 372.

Plaintiff was seen by Dr. Moon on September 13, 1999. Dr. Moon reported the back was improving, straight leg raising was negative, no other musculoskeletal complaints. Tr. 372.

Plaintiff presented to Dr. Moon on October 11, 1999 complaining of trouble with aches, pains, myalgias of the neck, upper thorax, low back radiating around to the ribcage. Dr. Moon checked for trigger points but did not see any trigger points. Tr. 370.

On December 6, 1999, Plaintiff underwent a multiplanar MRI of the thoracic spine from T7 to L1. J. Samuel McCown, M.D., radiologist, noted that sagittal images demonstrated a mild disc bulge at C6/7, but axial images demonstrated no focal herniation at that level. There was also noted a prominent left-sided disc bulge posteriorly at C12/L1. Dr. McCown assessed spondylosis as described, the most focal component being at T12/L1 in the left paramedian position where there was a focal disc bulge. Tr. 313.

Plaintiff was examined by Dr. Moon on December 17, 1999. He noted that Plaintiff had a little evidence of cartilaginous swelling on the lt lateral thoracic area. Tr. 367.

Plaintiff presented to Pee Dee Orthopaedic Associates, P.A. (PDOA) on December 22, 1999

4

for evaluation. Dewey N. Ervin, M.D. noted thoracic spondylosis with posterior disc bulge. Dr. Ervin noted that Plaintiff had failed at conservative treatment. He scheduled a series of epidural steroid injections for Plaintiff. Tr. 250-51; Tr. 303.

Plaintiff was seen at the McLeod Regional Medical Center Pain Management Center on January 7, 2000 and January 19, 2000 for low thoracic epidural injections for her T12/L1 thoracic radiculitis. TR. 306. On January 7, 2000, she was examined by L.R. Perry, Jr., M.D. She reported that the pain had started approximately a year previously and was aggravated by physical exertion, such as raking the yard. Plaintiff expressed pain on palpation of the mid-back area along the T12/L1 spinous processes. Motor and sensory exam was normal. Dr. Perry assessed thoracic disc disease with thoracic radiculitis. Tr. 311-12.

Plaintiff was seen on March 10, 2000 by Dr. Moon. An examination of the back demonstrated a lesion on the left side of the spine about the low thoracic area that Dr. Moon had not appreciated previously. Tr. 366.

Plaintiff was examined by W.S. Edwards, Jr. M.D. at PDOA on March 13, 2000. Dr. Edwards noted that Plaintiff was able to arise from a sitting to a standing position without difficulty. She stood erect with normal thoracic and lumbar lordosis. There was no obvious scoliosis, no spinal tenderness or palpable step off of the spinous processes in the thoracic or lumbar regions. Spinal flexibility was good in all planes, although Plaintiff stated that flexion caused some increased discomfort in the back. There was no paraspinous spasm, no trigger points or atrophy, and no sciatic notch tenderness. There were no sciatic stretch signs. Motor function in the lower extremities was normal. There were no long track findings. Reflexes were two plus and symmetric. Hip and knee motion was full. Peripheral pluses were full. Gait was nonantalgic. Dr. Edwards diagnosed Plaintiff

with a possible disc protrusion, T12/L1.  Tr. 248-49.

Plaintiff underwent a CT myelogram on March 27, 2000 that showed a left-sided disc protrusion that appeared to be relatively small at T12/L1 on the left.  Dr. Edwards referred Plaintiff to the Spine Center at the Charleston Medical University.  Tr. 248.

Plaintiff presented to John A. Glaser, M.D. on April 10, 2000, complaining of thoracolumbar pain and left intercostal pain that had been ongoing for eight or nine months.  Her gait and balance were normal.  She seemed slightly hypersensitive in the mid-thoracic distribution on the left side. Her reflexes were symmetric and normal in her upper and lower extremities.  Dr. Glaser could find no obvious motor, sensory, or reflex deficit.  An MRI of the thoracic spine and CT myelogram of the thoracolumbar spine showed a left-sided T6-7 disk herniation with no obvious cord compression. The thoracolumbar junction had some degenerative disks with no significant neurologic compression.  Tr. 239.  Dr. Glaser recommended physical therapy and intercostal injections. Plaintiff again presented to Dr. Glaser, but was not examined, on May 22, 2000.  Plaintiff informed Dr. Glaser that she was scheduled for a block with the Pain Clinic in June 2000.  Tr. 238.

B.    ALJ Hearing Testimony - August 25, 2005

Plaintiff testified at the hearing before the ALJ that she was thirty-one years old and that she completed the tenth grade.  She obtained a GED.  Plaintiff testified that Dr. Moon had been her main treating physician since approximately 1998.  Tr. 407-08.  Plaintiff testified that in February 2000 her pain was so intense she could not pick up her children, who at that time were three years old and six years old.  Tr. 411.  Plaintiff stated that she could not do much of anything.  *Id.*  Plaintiff denied being pain free over the previous six years except for brief days at a time.  Tr. 412.  Plaintiff denied being able to mop, sweep, or any motion that makes her twist.  She stated her pain at the hearing was

seven on a scale of one to ten.  Tr. 413.  According to Plaintiff, her mother or husband did the grocery shopping.  She spent most of her time in a recliner and bed.  Tr. 414.  Plaintiff testified that in 2000 she was taking a lot of pain medicine, including Motrin, Percocet, Lortabs, Vicodin, and Oxycotin.  Tr. 416.  Plaintiff testified that the medications clouded the functions in her head so that she could not concentrate or remember anything.  Tr. 417.  Plaintiff testified that her husband paid the bills.  Tr. 418.  Plaintiff further testified that she had been prescribed Elavil, Wellbutrin, and Paxil for depression.  Tr. 418-19.

Thomas Lee, Plaintiff's husband, also testified.  According to Mr. Lee, Plaintiff stayed home and was in constant pain since 1999 and early 2000.  Tr. 422.  He generally took Plaintiff to receive epidural shots and accompanied her to the doctor.  Mr. Lee testified that when he went to work Plaintiff was in bed, and when he came home, she was in bed.  Plaintiff occasionally would spend time in a recliner.  Tr. 423.  Mr. Lee testified that Plaintiff's pain medicine affected her.  Plaintiff would get started with household duties, but she could not finish them.  She would often forget tasks and would have to be reminded with a note.  Tr. 424.  On occasion the pain medicine would make Plaintiff nauseated and sleepy.  Tr. 425.

Arthur Schmitt, a Vocational Expert, testified at the hearing that Plaintiff's relevant past work included cashier, machine operator, dry cleaning worker, and sewing inspector.  The ALJ inquired as to positions available to a person of Plaintiff's age, education, and work experience of a light exertional level with a sit/stand option; no ladders, scaffolds, and ropes; and no hazardous environments such as unprotected heights, moving machinery; and unskilled.  Tr. 426.  The Vocational Expert testified that such an individual could perform work as a parking lot attendant, tobacco sampler, and  storage facility clerk.  With the description remaining the same, except

requesting sedentary work, the Vocational Expert testified that jobs existed such as surveillance system monitor, telephone quotation clerk, weight inspector, weight tester. The Vocational Expert testified that, if the ALJ were to accept all testimony presented at the hearing as fully credible, there would be no work Plaintiff could perform. Tr. 427.

Upon questioning by counsel for Plaintiff, the Vocational Expert opined that the sedentary positions he had identified would be eliminated if the worker required one-hour periods in a reclined position in the morning and afternoon. The Vocational Expert further stated that all jobs would be eliminated if the worker had difficulty concentrating or being attentive to simple tasks to the point where tasks were abandoned. The Vocational Expert also testified that the positions would be eliminated if the worker was significantly late or absent one day per week because of pain or follow-up appointments with physicians. Tr. 428.

C.     <u>ALJ Hearing Testimony - November 15, 2006</u>

Plaintiff testified that in June 2000 she was having pain that radiated around into her left ribcage. Tr. 439. She testified that when the pain commenced it never eased off. Plaintiff testified that by June 2000, she had tried physical therapy and medications to help with the pain. She received three epidural injections, but the injections gave only brief relief. According to Plaintiff, she could stand only from twenty to thirty minutes then had to sit down. She spent most of her time in a recliner. Tr. 441. Plaintiff could not twist, stoop, or bend down to pick up objects. Tr. 442. Plaintiff testified that her medications made her dizzy and drowsy. Tr. 443. Plaintiff testified that she has not had a whole day since her back started hurting that she has not been pain-free. Tr. 445.

Plaintiff testified that she takes medication for depression and anxiety stemming from the pain. Plaintiff testified that her mother has helped raised Plaintiff's children. Tr. 447. According

to Plaintiff, in 2000 she could mop, sweep, or perform other household tasks. Plaintiff testified that she engaged in no social activities or church, and that her mother or husband did the grocery shopping. Tr. 448. Plaintiff testified that she has trouble sleeping. Tr. 449.

Thomas Lee, Plaintiff's husband, testified that Plaintiff appeared to be in a lot of pain in June 2000. Mr. Lee testified that Plaintiff had difficulties walking and standing, and that she was uncomfortable in a reclined position after a length of time. Tr. 454. Mr. Lee testified that he or Plaintiff's mother would spend time with Plaintiff because they did not trust Plaintiff with the children. Tr. 455-56. Mr. Lee testified that Plaintiff would fall asleep while the stove was on and that she was unable to pay bills. According to Mr. Lee, he and Plaintiff's mother did the grocery shopping. Tr. 456.

Robert Brabham, Vocational Expert, testified that Plaintiff had relevant past work as retail cashier, grocery cashier, and dry cleaner's cashier. The Vocational Expert opined that Plaintiff could perform sedentary unskilled work as a machine tender, surveillance monitor, production associate. The Vocational Expert testified that if the testimony presented was fully credible, Plaintiff would not be able to perform any work. Tr. 458. Upon query by Plaintiff's counsel, the Vocational Expert further noted that no jobs would be available to someone who would need to lie down for two hours out of a work day, and who could not concentrate to complete even simple tasks. Tr. 459. The Vocational Expert also testified that no jobs would be available to someone who missed a day or work a week. Tr. 462.

D.   Dr. Moon's Opinion Letter (2005)

Dr. Moon prepared a letter signed February 15, 2005, in which he opined that Plaintiff suffers from vertebrogenic disorders that include severe disseminated osteoarthritis with highly abnormal

bone scan for her age. He stated that a MRI of the thoracic spine showed a highly abnormal MRI with and without IV enhancement for the age. Dr. Moon noted very little abatement in Plaintiff's chronic severe pain despite treatment at McLeod Pain Management, to include therapy exercises, steroid injections, TENS Unit, and medications. Dr. Moon stated that Plaintiff had chronic cervical, thoracic, and lumbar pain, muscle spasms, significant limitation of motion, appropriate radicular distribution of significant motor loss, weakness, sensory loss, and reflex loss in her spine and lower extremities since June 1, 2000. Tr. 379-381. On October 31, 2005, Dr. Moon submitted the identical letter with a notation that Plaintiff "has had no improvement from last notation." Tr. 382-84.

E.    ALJ's January 26, 2007 Decision

The ALJ found that Plaintiff last met the insured status requirements of the Act on June 30, 2000; that she did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 1999 through her date last insured of June 30, 2000; and that Plaintiff had the following severe impairment through the date last insured: degenerative disc disease of the thoracic spine. Tr. 469. The ALJ recounted the information contained in the medical records and further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ determined that Plaintiff's thoracic spine disease did not meet Listing 1.04 of the Listing of Impairments. The ALJ noted that, to meet Listing 1.04, a disorder of the spine must result in a compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. The ALJ noted that MRI examinations during the period prior to June 30, 2000

10

failed to reveal significant herniations, stenosis, or nerve root impingement. The ALJ found that Plaintiff had the residual functional capacity for sedentary work through the date last insured, in that Plaintiff could lift and carry no more than ten pounds at a time, sit for six hours in an eight-hour workday, and stand and walk for two hours in an eight-hour workday, with the following restrictions: unskilled work with a sit/stand option at will, no climbing of ladders, scaffolds, or ropes, and no hazards. Tr. 472.

The ALJ further determined that Plaintiff's medically determinable impairment could have been reasonably expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ noted that Plaintiff's treating physicians failed to limit her activities in any way; that, except for the injections, Plaintiff's treatment was routine and/or conservative in nature; and that, contrary to her testimony, she reported on March 13, 2000 that she was able to tolerate her housewife activities. The ALJ stated that medical records during the period did not corroborate the side effects from medications claimed by Plaintiff. The ALJ further determined that the medical records did not support Dr. Moon's opinion of February 15, 2005. Tr. 473. The ALJ noted Plaintiff's claims regarding difficulty sitting and standing and that Plaintiff received help from her mother and sister-in-law. The ALJ also recounted Mr. Lee's testimony that Plaintiff was in a lot of pain in June 2000 and did not have much of a life. Tr. 473. The ALJ also noted that medical records subsequent to June 30, 2000 show continued treatment for Plaintiff's back condition, but found that they did not substantiate the severity of Plaintiff's impairment during the period at issue, April 1, 2999 to June 30, 2000. Tr. 474. Finally, the ALJ determined that Plaintiff was unable to return to her past relevant work, but that there were jobs that existed in significant numbers in the national economy

that Plaintiff could have performed through the date last insured.  Tr. 475.  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 1, 1999 through June 30, 2000.  Tr. 476.

F.    <u>Dr. Moon's Opinion Letters (2009)</u>

On February 6, 2009, Dr. Moon resubmitted his letter signed February 15, 2005, noting that "There has been no change or improvement of condition since last exam."  Tr. 384-96.  On July 14, 2009, Dr. Moon submitted a letter reciting Plaintiff's treatment since August 31, 1999, which Plaintiff first presented to his office complaining of back pain in the lower thoracic part of her spine and the upper lumber part of her spine.  Dr. Moon noted that Plaintiff underwent decompressive laminectomy at the T12 level of her spine in April 2001, and that her pain had never been alleviated.  Dr. Moon stated that Plaintiff suffers from chronic unrelenting pain from severely disseminated arthritis throughout her cervical, thoracic, and lumbar spine regions.  Dr. Moon stated that Plaintiff has had muscle spasms, significant limitation of motion, appropriate radicular distribution of significant motor loss, weakness, sensory loss, and reflex loss in her spine and lower extremities since June 1, 2000.  Dr. Moon opined that he was certain to a reasonable degree of medical certainty that Plaintiff's condition had reached a disabling level of severity as of June 1, 2000.  Tr. 389-90.

G.    <u>Decision of Appeals Council</u>

In a June 10, 2010 letter, Plaintiff, through counsel, challenged the ALJ's unfavorable decision dated January 26, 2007, on the grounds that substantial evidence did not support the ALJ's position.  Plaintiff contended that Dr. Moon's opinion was supported by the medical evidence.  Plaintiff further asserted that the ALJ was silent as to his credibility findings of Mr. Lee, and that the ALJ failed to make specific findings as to Plaintiff's credibility.  Tr. 392-95.

The Appeals Council issued an Order and Notice of Appeals Council Action on September 16, 2010. The Appeals Council noted that it took into account Dr. Moon's July 2009 report in which he stated that Plaintiff suffered from chronic, unrelenting pain since June 1, 2000. The Appeals Council noted that March 13, 2000 records from Plaintiff's treating orthopedic specialist did not indicate the spasm or neurological and other abnormalities Dr. Moon reported. The Appeals Council noted that Plaintiff could tolerate her activities as a housewife during this time. The Appeals Council further noted that subsequent records, including orthopedic treatment records dated March 1, 2001, show none of the motor, sensory, or reflex loss that Dr. Moon reported for the entire period back to June 2000. The Appeals Council also noted that an MRI study done in March 2001 showed a "rather large" herniation at T12/L1, which was different from the results of a CT scan in March 2000, which showed a "relatively small" protrusion at T12/L1. The Appeals Council found a change in condition subsequent to June 30, 2000, the date last insured. Accordingly, the Appeals Council affirmed the ALJ's decision. Tr. 9-10.

H.     <u>The Report and Recommendation</u>

On judicial review, Plaintiff alleges that the Commissioner erred (1) by failing to accord her treating physician's opinion controlling weight; (2) by finding Plaintiff's subjective testimony less than fully credible; and (3) by failing to perform a credibility analysis regarding the testimony of Plaintiff's husband.

1.     The Magistrate Judge noted that a treating physician's medical opinion must be given controlling weight if "well-supported and not inconsistent with the other substantial evidence in the case record[.]" SSR 96-2p. The Magistrate Judge observed that no treating or examining physician offered opinions regarding Plaintiff's abilities or placed any limitations on Plaintiff's residual

function capacity as of the time her insured status expired on June 30, 2000. The Magistrate Judge noted that Plaintiff's back complaints and treatments in 1999 and 2000 did not support Dr. Moon's February 15, 2005 opinion. The Magistrate Judge further noted that the ALJ properly considered Dr. Moon's opinion and explained how it was inconsistent with Dr. Moon's medical records and those of Plaintiff's orthopedic specialists. The Magistrate Judge also agreed with the Appeals Council that Dr. Moon's 1009 opinion was inconsistent with the medical records from March 2000 and other dates closer to June 30, 2000. Thus, the Magistrate Judge determined that the ALJ and Appeals Council appropriately considered and discounted Dr. Moon's opinions regarding Plaintiff's condition as of June 2000.

2.      The Magistrate Judge noted that SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. If so, the ALJ is to consider the record as a whole in assessing Plaintiff's credibility regarding the severity of her subjective complaints, including pain. The Magistrate Judge determined that the ALJ had adequately considered Plaintiff's subjective complaints and articulated his reasons for finding her claims about pain to be less than fully credible. The Magistrate Judge observed that Plaintiff's treating physicians did not limit Plaintiff's activities in any way, that her back problems were treated conservatively, and that Plaintiff reported being able to tolerate her housewife activities. The Magistrate Judge also noted that Plaintiff's medical records did not corroborate her allegations of side effects from medication. Accordingly, the Magistrate Judge determined that the ALJ's finding was supported by substantial evidence.

3.      The Magistrate Judge further noted that the ALJ summarized the testimony of Mr.

Lee in considering the credibility of Plaintiff's subjective complaints. The Magistrate Judge further noted that Plaintiff had not shown harm from the ALJ's failure to make a specific finding regarding the credibility of Mr. Lee's lay witness testimony.

Based on her review of the record, the Magistrate Judge recommended that the Commissioner's decision be affirmed.

I.     <u>Plaintiff's Objections to the Report and Recommendation</u>

Plaintiff asserts that the Magistrate Judge erred (1) in finding that the ALJ's decision was not deficient despite the ALJ's failing to make any specific credibility findings as to Mr. Lee; (2) in finding that the ALJ's decision was not deficient despite the ALJ's failing to find Plaintiff's testimony full credible; and (3) in failing to find both the ALJ's evaluation and the Appeals Council's evaluation of Dr. Moon's opinion erroneous. The court disagrees.

1.     Plaintiff contends that, had Mr. Lee's testimony regarding her functional capacity been found credible, Plaintiff would have been found unable to engage in a full range of sedentary work as of her alleged onset date. Plaintiff contends that Mr. Lee's testimony presents valid evidence of significant pain and demonstrates problems with focus, concentration, and attention because of side effects from pain medications. As the Magistrate Judge properly noted, however, the ALJ took into consideration Mr. Lee's statement that Plaintiff was in significant pain and thoroughly considered Mr. Lee's testimony in determining the effects of Plaintiff's impairments on her ability to work. Further, considering the vagueness of Mr. Lee's testimony and the fact that it is without support in the medical records prepared during the relevant time, Plaintiff cannot show prejudice. Plaintiff's objection is without merit.

2.     Plaintiff asserts that it is undisputed that prior to her date last insured of June 30,

2000, Plaintiff suffered a herniated disc in her thoracic spine that caused her significant pain. However, as the Magistrate Judge noted, Plaintiff's treating physicians did not limit her activities, her back problems were treated conservatively, and Plaintiff reported that she could tolerate her housewife activities. Further, the medical records do not corroborate Plaintiff's allegations of unrelenting pain. Plaintiff's objections are without merit.

3.      Plaintiff asserts that Dr. Moon's medical opinion is entitled to controlling weight. In this case, the Magistrate Judge reiterated the medical records in detail and noted that Plaintiff was in no acute distress when she saw Dr. Moon on March 10, 2000 or when she saw orthopedist Dr. Edwards on March 13, 2000. The Magistrate Judge further noted that Plaintiff had spinal flexibility, no scoliosis, no spinal tenderness, and no paraspinous spasm/trigger points/atrophy when examined by Dr. Edwards. A March 27, 2000 CT myelogram revealed a small left-sided disc protrusion for which Plaintiff was continued on conservative treatment. The court, having set out the medical records in detail hereinabove, concurs with the Magistrate Judge's findings. Plaintiff's objections are without merit.

IV.  <u>CONCLUSION</u>

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated herein and in the Report and Recommendation, the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Court

March 16, 2012
Columbia, South Carolina

16